UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br>     Plaintiff,<br>v.<br>CODY MCCANN,<br>COLLEGE OF<br>OUR LADY OF THE ELMS,<br>TERESA WINTERS,<br>ANDREW COSTON,<br>and PABLO MADERA,<br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     C.A. 3:24-cv-30129 |

**COMPLAINT AND JURY DEMAND**

**Parties**

1. Plaintiff Jane Doe is an individual who resides in Northfield, Franklin County, Massachusetts and is an upcoming sophomore student at College of Our Lady of the Elms in Chicopee, Hampden County, Massachusetts.

2. Defendant Cody McCann is an individual who resides in Springfield, Hampden County, Massachusetts and was at all times relevant a freshman student at College of Our Lady of the Elms in Chicopee, Hampden County, Massachusetts.

3. Defendant College of Our Lady of the Elms is a private secondary education institution located in Chicopee, Massachusetts.

4. Defendant Teresa Winters is an individual who upon information and belief resides in South Hadley, Massachusetts, and who at all times relevant was

and is employed at College of Our Lady of the Elms and acts as their Title IX Deputy.

5. Defendant Andrew Coston is an individual who upon information and belief resides in Chicopee, Massachusetts and at all times relevant was and is employed by at College of Our Lady of the Elms and acts as their Vice President.

6. Defendant Pablo Madera is an individual who upon information and belief resides in Chicopee, Massachusetts and at all times relevant was employed by at College of Our Lady of the Elms and acts as the Director of Public Safety.

**Jurisdiction, Venue and Standing**

7. Plaintiff brings this action under Title IX for sex discrimination and harassment, along with ancillary state claims, giving this Court federal question jurisdiction under 28 U.S.C. § 1331.

8. Defendant Our Lady of the Elms (hereinafter "Elms") is a private educational institution that receives federal financial assistance[1], thus subjecting it to a private right of action for claims under Title IX.

9. Venue is proper under 28 U.S.C. § 1391, in that all of the defendants reside in Western Massachusetts, and the substantial part of the events or

---

[1] The most recent 990 form publicly available on the IRS website lists Elms as having received $5,204,824 in government grants in the year 2021 alone. See: https://apps.irs.gov/pub/epostcard/cor/042225850_202206_990_2023060921420306.pdf

omissions giving rise to the Plaintiff's claim occurred in Hampden County, Massachusetts.

## Factual Allegations

### Background

10. Plaintiff Jane Doe lived on the third floor of the Rose William building, an all-girls floor of a coed dorm at the Elms property.

11. Plaintiff moved into her dorm at the Rose William building in the fall of 2023.

12. The Rose William building was owned and controlled by defendant Elms and was used to house students who were enrolled at Elms College.

13. Plaintiff met Defendant McCann through her roommate.

14. Defendant McCann would consistently spend time with the women on the third floor, which was an all-female living area.

### Plaintiff's Friendship with Defendant McCann

15. On or about October 12, 2023, Plaintiff learned that McCann was romantically interested in her.

16. For the next few days, Plaintiff and Defendant McCann would exchange text messages.

17. Plaintiff concluded that she and Defendant McCann were friends who may like each other romantically and that was all their relationship was.

18. Plaintiff and Defendant McCann's text messages continued into the weekend of October 14 and 15 of 2023, culminating with Defendant McCann's inviting Plaintiff to his own dorm room (on a male floor) to watch movies with him.

**The Sexual Assault**

19. On or about October 15, 2023, Plaintiff agreed to meet up with Defendant McCann and went to his room at approximately 9:45 pm.

20. When Plaintiff arrived, Defendant McCann asked his roommate to lock the door on his way out.

21. Doorknobs in the building only locked from the outside, so the residents could not lock the doors while inside the dorm rooms.

22. Plaintiff had only been alone in a room with Defendant McCann on one other occasion, so she found the request strange.

23. Plaintiff reassured herself that she would be fine because she felt as though she was getting to know Defendant McCann based on their past few days of exchanging messages with one another.

24. They moved to a bed in McCann's room to watch television, where Plaintiff was on the inside, positioned between Defendant McCann and the wall.

25. Plaintiff placed her phone at the foot of the bed, so it was close to her, but Defendant McCann moved the phone to his shower caddy in the middle of the room and out of her reach.

26. Defendant McCann stated something like "I'm going to put this over here" but did not explain why.

27. Plaintiff thought this was odd but figured that if she needed her phone, she would just ask for it.

28. Plaintiff was sitting propped up on the bed and Defendant McCann suddenly and expectedly grabbed her face and started to kiss her.

29. Plaintiff moved her head away and told Defendant McCann that her intentions in coming to his dorm room were simply to watch a movie with him.

30. After about thirty seconds of Defendant McCann kissing Plaintiff, he escalated his efforts by placing his body on top of Plaintiff's.

31. Plaintiff is significantly shorter and smaller than Defendant McCann and was surprised and frightened by their dramatic size difference, with plaintiff being five feet tall and Defendant McCann being six feet, two inches tall.

32. Defendant McCann then wedged his body between Plaintiff's legs.

33. Plaintiff was on her back, propped up by a pillow and still stuck between the wall and Defendant McCann with no way of moving.

34. Defendant McCann placed his hands on Plaintiff's wrists and then proceeded to pin them over her head with his hand, rendering her unable to push him off of her.

35. Defendant McCann simultaneously used his other hand to start groping Plaintiff's breasts, without her consent.

36. Initially, Defendant McCann was touching Plaintiff through her sweatshirt, then became more aggressive as he moved his hand under her shirt, squeezing her breasts.

37. Throughout Defendant McCann's efforts, and beginning with his kissing the Plaintiff, Plaintiff repeatedly told Defendant McCann to stop and that she did not come to his dorm room to engage in sexual activity.

38. Defendant McCann then temporarily stopped his attempts, admitted that he had crossed a line and apologized.

39. Plaintiff was still stuck between Defendant McCann and the wall, so she asked him for her phone.

40. Defendant McCann told Plaintiff she did not need her phone because she was with him.

41. A few moments later, Defendant McCann turned to Plaintiff, grabbed her face, began to kiss her again, and before she could stop him, he again placed his entire body on top of hers.

42. Plaintiff realized immediately that Defendant McCann had a motive to go under her shirt and touch her bare breasts.

43. Defendant McCann had Plaintiff's hands pinned over her head again and used his other hand to reach under her sweatshirt, unclip her bra, and lift it up so her bare chest was exposed.

44. Defendant McCann then let go of Defendant's hands and began to bite her breast, causing her pain.

45. Plaintiff stopped Defendant McCann and told him she was sorry but did not want to do what he was doing, and she thought he would stop.

46. When Plaintiff again vocalized that she did not consent, Defendant McCann told her she needed to relax and tried to reassure her that it was "just him".

47. Plaintiff was eventually able to break free from Defendant McCann, and immediately asked for her phone.

48. Plaintiff knew she was locked in Defendant McCann's room, but she had an idea to have her roommate call her, feigning an emergency so that Plaintiff had an excuse to leave, and so that another person knew she was in danger.

49. Plaintiff could not get out of the bed unless Defendant McCann got off the bed and let her out, which it was clear he was not willing to do.

50. Plaintiff did not know how she could safely get out of the situation.

51. When Defendant McCann saw Plaintiff was clearly upset, he said he would stop, then apologized, stated that he had crossed a line, needed to control himself, and would only do what she was comfortable with.

52. Plaintiff told Defendant McCann she was not comfortable with what he was doing.

53. Plaintiff did not want to anger Defendant McCann because she is significantly smaller than him and did not want to make the situation worse.

54. Moments later, Defendant McCann again grabbed her face and pulled her leg across him, so they faced each other.

55. Defendant McCann started to move one hand into Plaintiff's underwear and aggressively thrust two fingers into her vagina.
56. Plaintiff's body froze, and she immediately told Defendant McCann to stop as she was flinching in pain.
57. Plaintiff repeatedly told Defendant McCann that he was hurting her and asked him to stop.
58. Defendant McCann told her that she was "just tense" and "needed to relax".
59. Plaintiff could not pull his fingers away from her and her pleas for him to stop were disregarded.
60. Defendant McCann did not stop for several minutes and placed his other hand on Plaintiff's throat, choking her as well.
61. Plaintiff was trying to push Defendant McCann away so he would stop, but he continued to choke her to stop her from resisting.
62. Defendant McCann began to fumble around with Plaintiff's clothes, and she was losing her will to fight because he was completely overpowering her.
63. Defendant McCann then backed away from Plaintiff for a moment and she quickly flipped onto her back, holding herself up by her elbows.
64. When Plaintiff looked at the end of the bed, she saw Defendant McCann taking a condom out of his pajama pants pocket, ripping it open with his teeth and started to roll it on.
65. Plaintiff heard Defendant McCann tell her "I want you right now".

66. Seeing Defendant McCann was distracted with the condom, Plaintiff rolled over to the edge of the bed to reach for her phone to text her roommate she needed help and needed to leave.

67. Plaintiff texted her roommate, who then called her and said her other friend needed her.

68. When Defendant McCann saw Plaintiff on the phone, he paused what he was doing and displayed extreme frustration.

69. Defendant McCann pulled the blankets off, allowing Plaintiff to be able to get out of the bed and put her shoes on.

70. Plaintiff communicated to Defendant McCann that her friend needed her, and she would have to leave.

71. Defendant McCann told Plaintiff she should come back, and Plaintiff stated she did not have time because it was getting late.

72. Plaintiff then left the room and returned to her dorm.

**Plaintiff's Physical Injuries**

73. Upon returning to her dorm room, Plaintiff began crying and told her roommate what had happened.

74. Plaintiff recalled telling her roommate that she believed she was bleeding and asked if she would go into the bathroom with her.

75. Plaintiff urinated and when she wiped found a significant amount of blood from her vagina.

76. Plaintiff was not on her menstrual cycle and realized the blood was from what Defendant McCann had done to her.

77. Plaintiff was in a lot of pain, sore, and could tell something was wrong.

78. Plaintiff's roommate informed her that she was assaulted and advised Plaintiff to tell the Residential Advisor.

79. Plaintiff and her roommate went to the Residential Advisor on their floor and explained the situation.

80. The Residential Advisor advised Plaintiff to make a report, go to the hospital due to the bleeding, and to tell her parents.

81. Plaintiff did not immediately follow the Residential Advisor's advice, as Plaintiff was unable to mentally accept what had happened to her.

82. Plaintiff's head was reeling, and she felt sick to her stomach that night.

83. Plaintiff took a shower, went to bed, and skipped her morning class for the first time that semester because she was not feeling well.

84. Plaintiff wanted to forget the prior evening's events and struggled with the decision of going to the hospital.

85. Plaintiff then noticed the bruise on her left breast and felt pain, discovering that it was getting worse.

86. Plaintiff went to the bathroom and realized she was still bleeding and had to put a pad on as though she were on her menstrual cycle.

87. Eventually, Plaintiff texted her mother about the events, who arrived at her school and took her to the hospital.

88. Plaintiff had an entire rape kit administered and was at the hospital for approximately six and a half hours.

89. These medical findings showed that Plaintiff suffered internal lacerations on her vagina.

**Defendant McCann's Response**

90. Plaintiff later discovered that Defendant McCann was not allowed on her floor due to other sexual assault allegations about him, and the fact that a no-contact order had been in place against him by another female student.

91. Two students prior to Plaintiff had made sexual assault allegations against Defendant McCann to Defendant Elms.

92. Defendant McCann continued to text Plaintiff after she left his dorm room.

93. Defendant McCann sent Plaintiff about eleven messages over the twenty-four hours after the incident that Plaintiff did not respond to.

94. Defendant McCann also sent text messages to Plaintiff's roommate, seeking information about Plaintiff's intentions.

95. Plaintiff suffered severely mentally after the incident including anxiety, depression, paranoia, changed eating habits, all of which affected her schoolwork and diminished her involvement on campus.

**Harassment Prevention Order**

96. Plaintiff reported her concerns to the campus police and was taken to the Chicopee Police department on October 18, 2023.

97. Plaintiff went to the Chicopee courthouse and obtained a Harassment Prevention Order against Defendant McCann on October 20, 2023.

**Anti-Harassment Contract Violations**

98. Plaintiff was now the third Elms College female student whom Elms had notice that McCann sexually assaulted.

99. On October 17, 2023, Defendant McCann was issued an anti-harassment contract from Defendant Elms, which he agreed to abide by.

100. On November 7, 2023, Defendant McCann was sitting on the second floor of the library.

101. Plaintiff studies in that area daily and proceeded up the stairs to find her usual spot.

102. Defendant McCann saw Plaintiff come up the stairs and made eye contact with the Plaintiff, and began attempting to speak with Plaintiff, in clear violation of the anti-harassment contract.

103. Plaintiff moved away from Defendant McCann.

104. Despite the fact that Defendant McCann was supposed to leave the area if he came within 10 yards of the Plaintiff, per the anti-harassment contract, he stayed where he was, in direct violation of the anti-harassment contract.

105. Plaintiff contacted Defendant Elms' Public Safety Department twice while waiting for Defendant McCann to leave.

106. Plaintiff's calls were ignored by Defendant Elms.

107. Plaintiff contacted Defendant Pablo Madera, the Director of Elms' Public Safety, who denied receiving any calls from Plaintiff.

108. Madera later acknowledged receiving a call for which there was no follow-up investigation.

109. Later, on its Instagram page, Defendant Elms posted a picture of Defendant McCann (at this time having had three separate Title IX complaints lodged against him) with his arm around a female Elms college student and wishing their students a Happy New Year.

110. Eventually, Defendant Elms notified Defendant that he was unable to enroll in further classes at the College.

## COUNT I
### (20 U.S.C. § 1681 Title IX Violation – As to Elms, Winters, Coston and Madera)

111. Plaintiff repeats and re-alleges paragraphs 1-110 of this Complaint

112. Title IX prohibits educational institutions who receive federal funds from excluding individuals from participating in, denying the benefits of, or subjecting to discrimination any educational program or activity.

113. Plaintiff, after having been sexually assaulted by Defendant McCann, lost motivation to study, missed classes and otherwise saw a decline in her academic performance.

114. Plaintiff, after having been sexually assaulted by Defendant McCann, was prevented from freely accessing the facilities at her college, including the

library, dining facilities and classrooms, or was otherwise forced to use these facilities in fear of Defendant McCann's being present.

115. Plaintiff was now the third female student that Defendants Elms, Winters, Coston and Madera knew that Defendant McCann had sexually assaulted.

116. By failing to prevent or punish Defendant McCann's sexual assault until after his third victim, Defendants created a culture where female students could not access Elm's benefits, services, programs and other activities at the same level as male students.

117. Therefore, the aforementioned Defendants denied female student the same benefits that male students were given, in those female students, such Plaintiff, were unable to safely use Elms' facilities without fear of sexual assault.

118. Elms, Winters, Coston and Madera had authority to address the discrimination and sexual assault occurring at Elms College.

119. Elms, Winters, Coston and Madera acted with deliberate indifference towards the discrimination and sexual assault by allowing McCann to continue to roam the female dorms, or by otherwise taking no meaningful steps to prevent him from sexually assaulting others, including Plaintiff.

120. In addition, Elms, Winters, Coston and Madera failed to provide any meaningful security or protection surrounding McCann's no-contact

requirements, as they not only did not prevent him from approaching Plaintiff at the school, but did not assist Plaintiff when she called for help.

121. These actions and lack of actions toward Defendant McCann's sexual assault were so severe, pervasive and objectively offensive that they deprived Plaintiff of access to the opportunities or benefits provided by the school.

122. These actions and lack of actions toward Defendant McCann's sexual assault were clearly unreasonable in light of the known circumstances.

## COUNT II
### (Negligence – As to Elms, Winters, Coston and Madera)

123. Plaintiff repeats and re-alleges paragraphs 1-122 of this Complaint.

124. Defendants at all times relevant, owed their students a duty of reasonable care in the manner in which they operated the school, including with respect to dorm room discipline and safety.

125. Defendants breached their duty to Plaintiff when, after becoming aware of the dangers posed by Defendant McCann, including his repeated sexual assaults, they failed to take any reasonable steps to prevent him from sexually assaulting others, or otherwise warning students to prevent this from happening to them.

126. As a direct and proximate cause of Defendants' negligence, Plaintiff unsuspectingly went to Defendant McCann's dorm room where she was sexually assaulted.

127. Plaintiff suffered significant physical and emotional damages as a result of Defendants' breach.

## COUNT IV
### (Intentional Infliction of Emotional Distress – As to McCann)

128. Plaintiff repeats and re-alleges paragraphs 1-127 of this Complaint

129. Defendant McCann, when he repeatedly sexually assaulted Plaintiff after she told him she did not want to engage in sexual conduct, knew or should have known that his conduct would cause Plaintiff emotional distress.

130. Defendant McCann, in forcibly digitally penetrating Plaintiff, taking her phone so that she could not call for help and otherwise positioning Plaintiff so that she could not leave his room, was engaging in extreme and outrageous conduct.

131. Plaintiff, as a result of Defendant McCann's aforementioned conduct, suffered severe and prolonged emotional distress.

## COUNT IV
### (Assault and Battery – As to McCann)

132. Plaintiff repeats and re-alleges paragraphs 1-131 of this Complaint.

133. Defendant McCann's actions demonstrated an intent to cause a harmful or offensive contact with Plaintiff, in that she told McCann that she did not wish to engage in sexual activity, but he forced himself on her regardless.

134. Defendant McCann, in refusing to abide by Plaintiff's boundaries and instead forcibly assaulting her, did in fact make contact with the Plaintiff, as evidenced by the physical injuries to her vagina and other bruising on her body.

WHEREFORE, plaintiff requests this Honorable Court enter judgment against the defendants jointly and severally on all counts of this complaint and:

    a) Award compensatory damages;

    b) Award punitive damages;

    c) Award interest and costs of this action to plaintiff;

    d) Award attorney fees to plaintiff; and

    e) Award such other relief which this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully submitted,

Plaintiff, by her attorneys:

| /s/ Michelle S. Cruz | /s/ Ryan P. McLane |
|---|---|
| Michelle S. Cruz, Esq. | Ryan P. McLane, Esq. |
| Law Offices of Michelle S. Cruz | McLane & McLane, LLC |
| 1380 Main Street, Suite 403 | 269 South Westfield |
| Springfield, MA 01103 | Feeding Hills, MA 01030 |
| (413) 592-9400 | (413) 789-7771 |
| Cruz4law@gmail.com | ryan@mclanelaw.com |
| BBO: 651081 | BBO: 697464 |